PRECEDENTIAL FOR PUBLICATION

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CRIMINAL NO. 2008-0023 |
| v. | ) | |
| | ) | |
| AMOBI CHRISTOPHER | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## <u>MEMORANDUM OPINION</u>

FINCH, SENIOR JUDGE

THIS MATTER comes before the Court on Defendant's Motion to Suppress filed on November 11, 2008.  A hearing was held on February 2, 2009.  After consideration and upon review of the briefs submitted by the parties, the Court issues the following ruling.

### I.   FACTUAL BACKGROUND

On September 16, 2008, Defendant Amobi Christopher was charged with (1) conspiracy in violation of 21 U.S.C. § 846, (2) possession of 100 or more marijuana plants,  schedule I controlled substances, with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), and (3) maintaining a drug involved premises in violation of 21 U.S.C. § 856(a)(1).

The Drug Enforcement Agency's High Intensity Drug Trafficking Area Officers ("DEA-HIDTA") began their investigation after a concerned citizen provided information about a wooden shack on Defendant's property that was being used to grow marijuana.  The Court issued

a delayed notice search warrant on June 27, 2008, (Mag. # 2008/0022) allowing DEA-HIDTA to search the wooden shack. The warrant required that notice of the search be provided within thirty (30) days of its execution.  Upon execution of that warrant, DEA-HIDTA found numerous marijuana plants and equipment that was being used to cultivate marijuana.

Based upon these observations, DEA-HIDTA sought and received Court approval on July 9, 2008, (Misc. # 2008/0025) for video surveillance of visual, non-verbal conduct in the wooden shack being used to grow marijuana. Images captured by the video surveillance showed Defendant watering, pruning, harvesting, and growing marijuana plants.  An extension of the Court's Order permitting video surveillance for an additional thirty days was approved on August 6, 2008, (Misc. # 2008/0032).

After observing Defendant cultivating marijuana via video surveillance, DEA-HIDTA went back to the Court and sought another search warrant to seize the marijuana.  Defendant was indicted and arrested shortly thereafter.  The Government provided notice of the June 27, 2008 warrant as well as the July 9 and August 6, 2008 Orders authorizing video surveillance on September 18, 2008, which was the day that Defendant was arraigned.

Defendant now seeks to suppress the evidence gathered as a result of all three Court orders, alleging that the searches violated his rights under the Fourth and Fifth Amendments.[1] Specifically, with respect to the delayed notice search warrant, Defendant claims that (1) the affidavit of Special Agent Christopher Howell failed to demonstrate that there was probable

---

[1] The exclusionary rule prohibits the introduction at trial of evidence obtained in violation of the Fourth or Fifth Amendments, for the purposes of proving a defendant's guilt. See Sanchez-Llamas v. Oregon, 126 U.S. 2669, 2680 (2006) ("[T]he Constitution requires the exclusion of evidence obtained by certain violations of the Fourth Amendment"); United States v. Dickerson, 530 U.S. 428, 433 (2000) (explaining that a violation of a defendant's Fifth Amendment rights is a constitutional basis for the exclusion of statements obtained as a result).

cause to issue the warrant, (2) the affidavit contained false and misleading information, and (3) the Government failed to provide notice of the search to Defendant within a reasonable time. See Def.'s Mem. in Supp. of Mot. to Suppress at 3, filed Nov. 12, 2008 (Docket No. 24).  With respect to the Court's Order authorizing video surveillance and the extension thereof, Defendant claims that Howell's supporting affidavits did not satisfy the requirements needed for electronic monitoring.  Id.

## II. DELAYED NOTICE SEARCH WARRANT

### A. PROBABLE CAUSE

With respect to the delayed notice search warrant approved by the Court on June 27, 2008, Defendant claims that the affidavit accompanying the warrant did not establish probable cause necessary to issue the warrant.  See Def.'s Mem. in Supp. of Mot. to Suppress at 3.

#### 1.  Standard of Review

The Fourth Amendment protects citizens from "unreasonable searches and seizures" of "their persons, houses, papers and effects." U.S. Const. amend. IV.[2]  The first clause of the Fourth Amendment protects citizens from governmental intrusions where they have a reasonable expectation of privacy. There is a presumptive requirement that searches or seizures be carried out pursuant to a search warrant.  See Katz v. United States, 389 U.S. 347, 357 (1967).  A search warrant must be obtained from a neutral and detached magistrate based "upon probable cause, supported by oath or affirmation and particularly describing the place to be searched, and the

---

[2]  The Fourth Amendment is made applicable to the Virgin Islands by the Revised Organic Act of 1954, § 3. United States v. Charles, 290 F. Supp. 2d 610, 614 (D.V.I. 1999); see United States v. Mark, 2007 U.S. Dist. LEXIS 17878 (D.V.I. Feb. 23, 2007).

persons or things to be seized."  U.S. Const. amend. IV; see United States v. Acosta, 965 F.2d

1248, 1251 (3d Cir. 1992); Fed. R. Crim. P. 41.  The task of the magistrate who issues a search

warrant is simply to make a practical common-sense decision whether, given all the

circumstances set forth in the affidavit before him, including the veracity and basis of knowledge

of persons supplying hearsay information, there is a fair probability that contraband or evidence

of a crime will be found in a particular place.  See Illinois v. Gates, 462 U.S. 213, 235 (1983);

see also Hill v. California, 401 U.S. 797, 804 (1971) ("[S]ufficient probability, not certainty, is

the touchstone of reasonableness under the Fourth Amendment . . .")

In Illinois v. Gates, the Supreme Court clarified the standard to apply when determining

whether information from an informant was sufficient to establish probable cause to support the

issuance of a search warrant.  Gates, 462 U.S. at 230-37.  The court explained that a reviewing

court must evaluate the "totality of the circumstances," considering both the circumstances under

which the informant obtained the information, and the circumstances that led the affiant to

believe that the informant was reliable.  Id.  Under the totality of the circumstances test, the

"basis of knowledge" and "veracity" prongs for assessing the usefulness of an informant's tips

are relevant considerations.  Id. at 233.  Two factors that have been held to bolster an informant's

reliability are firsthand observation and an explicit and detailed description of the events at issue.

Id. at 234.  Corroboration of details of an informant's tip by independent police work may add to

the reliability or veracity of the source and Gates allows for the government to establish probable

cause through additional investigation.  See id.

**2.   Discussion**

4

Howell's affidavit indicated that DEA agents had received tips from a confidential source regarding Defendant's activities relating to the cultivation of marijuana plants.  The affidavit describes the information provided to law enforcement by a concerned citizen who allegedly witnessed a marijuana cultivation operation inside a wooden shack on Defendant's property.  See Howell Aff. at 3.  Howell's affidavit explains that, "[t]he CC came to the task force on his/her own behalf without request of reward for providing information.  The CC is believed reliable because he/she provided information during the June 19, 2008 interview that was independently verified by law enforcement."  Id. at 5-6.  Howell avers that the concerned citizen's reliability and credibility is also based on the fact that information provided was personally observed.  Id. at 6.

The Court notes that a supporting affidavit need not contain direct evidence that proof of wrongdoing would be present at the premises.  United States v. Conley, 4 F.3d 1200, 1207 (3d Cir. 1993).  "Instead, probable cause can be, and often is, inferred by 'considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [the] property.'"  Id. (quoting United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993)).  Howell's factual assertions that a concerned citizen (1) provided detailed information about a marijuana cultivation operation, (2) went to the authorities voluntarily, without requesting any sort of compensation, (3) has provided reliable information in the past, and (4) observed the events first-hand raise the inference that the informant was a credible source of information upon which the officers could reasonably rely.  See Gates, 462 U.S. at 233-234; see also United States v. Morales, 238 F.3d 952, 953 (8th Cir. 2001) ("Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is

5

corroborated by independent evidence"). Based on the totality of circumstances, the Court finds that there was probable cause to believe that the cultivation of marijuana plants was taking place inside the wooden structure described in Howell's affidavit.

## B. ALLEGED FALSE STATEMENTS IN WARRANT

Defendant claims that Howell's affidavit supporting the delayed notice search warrant contained fraudulent misrepresentations or omissions, violating the requirement for a full and complete statement for probable cause. See Def.'s Mem. in Supp. of Mot. to Suppress at 5.

### 1. Standard of Review

There is a presumption of validity with respect to the affidavit supporting a search warrant and a defendant is not automatically entitled to a hearing when he challenges a search warrant. United States v. Brown, 3 F.3d 673, 676-78 (3d Cir. 1993); see United States v. Motz, 936 F.2d 1021, 1023 (9th Cir. 1991). To challenge the veracity of certain factual statements in an affidavit supporting a search warrant, the Supreme Court in Franks v. Delaware, 438 U.S. 154, 155-56 (1978) held that, "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth was included by the affiant in the warrant affidavit, and if the allegedly false statements are necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."

A defendant is also entitled to a Franks hearing upon a "substantial showing that the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading." United States v. Whitworth, 856 F.2d 1268, 1280 (9th Cir

1988) (quoting United States v. Stanert, 762 F.2d 775, 781 (9th Cir. 1985); see United States v. Yusuf, 461 F.3d 374, 383 (3rd Cir. 2006); see also Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000) (holding that Franks applies to material omissions of fact made intentionally or with a reckless disregard for the accuracy of the affidavit).  The concept of reckless disregard has a different meaning when applied to omissions rather than misrepresentations.  Omissions are made with reckless disregard if the information omitted is the kind of information that a reasonable person would expect a judge to want to know.  Russo, 212 F.3d at 788.  Negligent or immaterial omissions, however, will not invalidate a warrant.

The Court in Franks set forth six considerations in granting a defendant a hearing to challenge a search warrant and the affidavit supporting the search warrant: (1) defendant's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine; (2) there must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof; (3) the allegations should point out specifically the portion of the warrant affidavit that is claimed to be false and they should be accompanied by a statement of supporting reasons; (4) affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained; (5) allegations of negligence or innocent mistake are insufficient; and (6) the deliberate falsity or reckless disregard whose impeachment is permitted is only that of the affiant, not of any nongovernmental informant.  Franks, 438 U.S. at 171-72; see United States v. Calisto, 838 F.2d 711, 714 (3d Cir. 1988); United States v. Meling, 47 F.3d 1546, 1553 (9th Cir. 1995).  The requirement of a "substantial preliminary showing" is intended "to prevent the misuse of a veracity hearing for purposes of discovery or obstruction."  Franks, 438 U.S. at 170-171.

7

Even when the above requirements are met, if material that is the subject of the alleged falsity or reckless disregard is set to one side and there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.  <u>Franks</u>, 438 U.S. at 171-72.  On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to a hearing.  <u>Id.</u>; <u>see</u> <u>Wilson v. Russo</u>, 212 F.3d 781, 787 (3d Cir. 2000); <u>Sherwood v. Mulvihill</u>, 113 F.3d 396, 399 (3d Cir. 1997).

### 2.  <u>Discussion</u>

Defendant relies upon <u>Franks</u> and its progeny to ask this Court for a hearing to challenge the validity of Howell's affidavit that underlies the warrant at issue here.  The law requires some basic quantum of evidence to support a defendant's allegations about the falsity of an affidavit. <u>See</u> <u>Franks</u>, 438 U.S. at 171-72; <u>Calisto</u>, 838 F.2d at 714.

Defendant claims that the concerned citizen described in Howell's affidavit does not exist, but fails to provide any evidence to support his allegation.  Rather than pointing to specific facts and evidence, Defendant relies on conclusory allegations that Howell fabricated the information in his affidavit, simply stating that "Defendant contends that no such CC exists, and if he/she did, that person is not reliable . . ."  <u>See</u> Def.'s Mem. in Supp. of Mot. to Suppress at 6. The Court does not find anything in Howell's affidavit or any other relevant evidence presented by Defendant to suggest that the concerned citizen was fabricated in this case.

By any fair reading of <u>Franks</u> and the related Third Circuit precedents, Defendant has failed to make a substantial showing that Howell's affidavit reflects false statements that were made knowingly and recklessly.  <u>See</u> <u>Franks</u>, 438 U.S. at 171-72.  Defendant has not provided any material support for his allegations that the affidavits contain false statements or omissions,

8

and that if amended to correct for such inaccuracies, the affidavits would lack probable cause for issuance of a search warrant.  Because Defendant failed to provide the Court with any statement of supporting facts or offer of proof, as required by law, the Court finds that Defendant is not entitled to a <u>Franks</u> hearing.

### C.  NOTICE TO DEFENDANT

With respect to the delayed notice search warrant, Defendant claims that proper inventory notice was not provided in a timely manner.  <u>See</u> Def.'s Mem. in Supp. of Mot. to Suppress at 3.

### 1.   Standard of Review

A court may issue a delayed notice search warrant, allowing the officers to dispense with advance or contemporaneous notice of a search if they have made a showing of reasonable necessity for the delay.  18 U.S.C. § 3103(a); <u>United States v. Villegas</u>, 899 F.2d 1324, 1337 (2d Cir. 1990).[3]  The officers "must at least satisfy the issuing authority that there is good reason for the delay." <u>Id.</u>; <u>see</u> <u>United States v. Freitas</u>, 856 F.2d 1425, 1454 (9th  Cir. 1988).  If a court finds reasonable cause to believe that providing immediate notification may have an adverse result on the investigation, Rule 41(f) of the Federal Rules of Criminal Procedure provides that notification may be delayed "if the delay is authorized by statute."  <u>See</u> Fed. R. Crim. P. 41(f).

---

[3] In <u>Villegas</u>, 899 F.2d 1324, DEA agents obtained a surreptitious entry warrant and executed it the next day. They seized nothing, but took photographs.  <u>Id.</u> at 1331.  The DEA affidavit requested permission to postpone giving notice of the search for seven days, or longer if the court extended the period.  <u>Id.</u>  The agents sought eight extensions of the notice requirement.  <u>Id.</u>  In each request for extension, an agent "filed an affidavit reporting on the progress of the investigation and explaining the need for the additional delay."  <u>Id.</u>  Notice was delayed until arrests were made and the defendant's claimed that the warrant was made invalid by a failure to give him reasonable notice.  <u>Id.</u>  The court found that the delayed notice was justified and, under the circumstances of the case, the notice was provided to the defendant within a reasonable time.  <u>Id.</u>

Despite the absence of specific time limits for notice in Rule 41(f), courts have interpreted the rule to require notice of a surreptitious search within a *reasonable* time after the covert entry. United States v. Pangburn, 983 F.2d 449, 453 (2d Cir. 1993); see also Villegas, 899 F.2d at 1337 (holding that, if a delay in notice is allowed, the court should "require the officers to give the appropriate person notice of the search within a reasonable time after the covert entry").

Under 18 U.S.C. § 3103(a)(b), a delayed notice search warrant must provide "for the giving of notice within a reasonable period not to exceed thirty (30) days after the date of its execution, or on a later date if the facts of the case justify a longer period of delay."   Any period of delay may be extended for good cause shown and each additional delay should be limited to periods of ninety (90) days or less, unless the facts of the case justify a longer period of delay. 18 U.S.C. § 3103(a)(c).  Any extensions of the period of delay "should not be granted solely on the basis of the grounds presented for the first delay; rather, the applicant should be required to make a fresh showing of the need for further delay." Villegas, 899 F.2d at 1337; see 18 U.S.C. § 3103(a)(c); see also Berger v. New York, 388 U.S. 41, 59-60 (holding that extensions of wiretap authorization should not be granted without new showings of probable cause therefor).

The particular circumstances of each individual case will determine what constitutes a reasonable time for service of a delayed notice search warrant or an extension thereof.  Villegas, 899 F.2d at 1337; Pangburn, 983 F.2d at 454.  Courts have generally held that a failure to provide timely inventory notice does not require suppression unless (1) such failure has caused incurable prejudice to the defendant or (2) there is substantial evidence that such failure was intentional and deliberate.  United States v. Donovan, 429 U.S. 413, 438-39 (1977) (holding that suppression not required due to government's inadvertent failure to provide inventory notice

where defendant was not prejudiced because notice was provided in discovery); see also United States v Hooper, 320 F. Supp. 507 (D. Tenn. 1969) (holding that failure of seizing officers to comply with notice requirements under Rule 41 did not invalidate an otherwise reasonable search).

## 2. Discussion

In this case, Howell's affidavit in support of the June 27, 2008 delayed notice search warrant states that, "delayed notice is warranted because reasonable cause exists to believe that providing immediate notification of the execution of the warrant will cause the target subjects to destroy evidence and conceal themselves from law enforcement." See Howell Aff. at 4. The warrant itself states that officers may "delay giving notice . . . . for a period of thirty (30) days from the date of entry." See delayed notice search warrant, issued on June 27, 2008, (Mag. # 2008/0022); 18 U.S.C. § 3103(a)(b). The Government provided notice of the June 27, 2008 warrant as well as the July 9 and August 6, 2008 Orders authorizing video surveillance on September 18, 2008, which was the day that Defendant was arraigned.[4]

Although Defendant argues that notice of the delayed notice search warrant was not served within a reasonable time, it would have been impossible for the Government to provide notice of the June 27, 2008 search warrant within thirty days without compromising the effectiveness of the subsequent sealed Court Orders authorizing video surveillance. "Certain types of searches or surveillances depend for their success on the absence of premature

---

[4] The notice requirement with respect to electronic surveillance requires that an inventory notice of the application, order, and any intercepted communications must be served on the person named in the order, "[w]ithin a reasonable time but not later than ninety days." See 18 U.S.C. § 2518(8)(d); Villegas, 899 F.2d at 1336. Defendant does not dispute the timeliness of the Government's notice regarding the July 9 and August 6, 2008 Orders authorizing video surveillance.

disclosure. The use of . . . a video camera would likely produce little evidence of wrongdoing if the wrongdoers knew in advance that their . . . actions would be monitored." Villegas, 899 F.2d at 1336.

What constitutes a reasonable time for delayed notice will depend upon the circumstances of each individual case and the Court bears in mind the ongoing nature of the investigation as well as the manner in which the delayed notice search warrant was executed in this case. See id. at 1337. The Court takes into account that, generally, a covert entry search is less intrusive than a conventional search with physical seizure because the latter deprives the owner not only of privacy but also of the use of his property. See Villegas, 899 F.2d at 1337. It is also the Court's perception that a covert entry search is less intrusive than a wiretap or video camera surveillance because "the physical search is of relatively short duration, focuses the search specifically on the items listed in the warrant, and produces information as of a given moment, whereas the electronic surveillance is ongoing and indiscriminate . . . ." Id.

Additionally, the Court notes that a violation of Federal Rule of Criminal Procedure Rule 41 or 18 U.S.C. § 3103's notice requirement does not necessarily call forth the application of the exclusionary rule. See Donovan, 429 U.S. at 438-39; Pangburn, 983 F.2d at 455. "Courts should be wary in extending the exclusionary rule in search and seizure cases which are not of constitutional magnitude." United States v. Burke, 517 F.2d 377, 386-87 (2d Cir. 1975). A rule of exclusion is properly employed only where the objection goes to the question of the reliability of the challenged evidence or reflects intolerable government conduct which is widespread and cannot otherwise be controlled. See Dunaway v. New York, 442 U.S. 200 (1979); Manson v. Brathwaite, 432 U.S. 98 (1977); United States v. Calandra, 414 U.S. 338 (1974); Neil v. Biggers,

409 U.S. 188 (1972); Mapp v. Ohio, 367 U.S. 643 (1961).  The imposition of sanctions requiring the suppression of evidence that results from a search where there has not been compliance with the relevant notice requirements must depend upon the relationship of the violation to the reliability of the evidence seized.

The Court finds it difficult to accept the proposition that a search may be deemed reasonable, and therefore constitutional, during the various stages of application for authorization, execution, and termination, only to be invalidated because of the operation of some condition subsequent, to-wit, a failure to provide notice.  See United States v. Cafero, 473 F.2d 489, 499 (3d Cir. 1973).  The procedural requirements for giving notice after execution of a valid search warrant are ministerial tasks and a failure to comply therewith, without more, does not amount to deprivation of Fourth Amendment rights necessitating suppression. Id.; see also Frisby v. United States, 79 F.3d 29, 31-32 (6th Cir. 1996).[5]  The Court holds that violations of the notice requirements under Rule 41 or 18 U.S.C. § 3103 will not lead to exclusion unless there is a substantial showing of either (1) incurable prejudice to the defendant or (2) bad faith on the part of law enforcement officers or government agents.  See Donovan, 429 U.S. at 438-439; Burke, 517 F.2d at 387; Mark, 2007 U.S. Dist. LEXIS 17878 at *33; see also United States v Hooker, 418 F Supp 476 (M.D. Pa. 1976) (finding that failure of government to properly file

---

[5] In Frisby v. United States, 79 F.3d 29, 31-32 (6th Cir. 1996), agents failed to provide the defendant with an inventory notice as required under Rule 41.  The court held that, "although the procedural steps enumerated in Rule 41 are important and should not be disregarded, they are ministerial and absent a showing of prejudice, irregularities in these procedures do not void an otherwise valid search.  Id. (internal quotations omitted); see Baranski v. Fifteen Unknown Agents of ATF, 252 F. Supp. 2d 401, 403 (W.D. Ky. 2003); see also United States v Hubbard, 493 F. Supp. 209 (D. D.C. 1979) (holding that failure to serve warrant was merely ministerial violation of former Rule 41 and did not render search fatally defective); United States v Bassford, 601 F Supp 1324 (D. Me. 1985) (finding that failure to give defendant complete copy of search warrant does not void otherwise valid search in absence of showing of prejudice).  In particular, the court found that the plaintiff was not prejudiced because he eventually received an inventory notice of items seized and because the agents seized no more than permitted by the warrant.  Frisby, 79 F.3d at 32.

inventory under Rule 41 would not require suppression of evidence where error was inadvertent and resulted in no prejudice to defendant).

Here, the covert entry and search of Defendant's property took place pursuant to a valid delayed notice search warrant and there is no dispute that marijuana plants were in fact found on the premises described in the warrant.  Furthermore, there is no allegation that the failure to serve Defendant with a copy of the warrant until his arraignment was in bad faith.  Even if the Defendant can show prejudice as a result of the postponement of service of notice, the Court finds that the there was an implied extension of the delayed notice search warrant when the Court granted the Order authorizing video surveillance on July 9 and an extension thereof on August 6, 2008.

The Court decided to issue the July 9th and August 6th Orders authorizing video surveillance based on evidence discovered through the execution of the June 27th delayed notice search warrant.  The ongoing nature of the investigation and the sequence of events in this case raise the inference that the Court authorized video surveillance with the understanding that notice of the covert search would be delayed during the period of video surveillance.  Therefore, the Court finds that the July 9th and August 6th Orders effectively extended the time period for notice of the June 27th search warrant.  There was good cause for the extension because of the need for further investigation to determine (1) the scope of the illegal activity and (2) the identity and roles of the participants.  Additionally, the Court finds that the notice provided to Defendant on the day of his arraignment was reasonable under the circumstances of this case.  Because the time period for delayed notice was extended for a reasonable period of time, the Court finds that such delay does not render the search unlawful or provide any support for suppression.

### III. SUFFICIENCY OF WARRANT FOR VIDEO SURVEILLANCE

Defendant claims that Agent Howell's affidavit in support of the warrant for video surveillance did not satisfy the necessary requirements outlined in Title III of the Omnibus Crime Control and Safe Streets Act of 1969, 18 U.S.C. §§ 2510-2520 ("Title III"). The Government contends that the provisions of Title III should not be considered in this case and claims that Defendant's "lengthy citations to Title III are not directly applicable because this statute is designed to regulate the wiretapping of verbal communications only. See Pl.'s Resp. to Def.'s Mem. in Supp. of Mot. to Suppress at 2, filed Dec. 15, 2008 (Docket No. 31).

### A.  APPLICATION OF TITLE III TO VIDEO SURVEILLANCE

Congress enacted Title III, codified at 18 U.S.C. §§ 2510-2520, as a comprehensive scheme governing the use of electronic eavesdropping by law enforcement agencies. The statute was explicitly designed to meet the constitutional objections to unregulated electronic surveillance articulated by the Supreme Court in Berger v. New York, 388 U.S. 41 (1967) and Katz v. United States, 289 U.S. 347 (1967). The Court notes that Title III, which specifically applies to the interception of audible communications and wiretaps, is not necessarily dispositive in the context of electronic interception of visual images.[6]  However, appellate courts that have addressed video surveillance have generally held that video surveillance conforming to the standards set out in Title III is constitutional. See  United States v. Lee, 359 F.3d 194, 203 (3d Cir. 2004); United States v. Falls, 34 F.3d 674, 678-80 (8th Cir. 1994); United States v. Cuevas-

---

[6] The Supreme Court has held that Title III is concerned with orders, "authorizing or approving the interception of wire or oral communications . . . ." United States v. New York Tel. Co. 434 U.S. 159, 166 (1977).  18 U.S.C. § 2510(1) defines "wire communications"  as "any aural transfer made in whole or part through the use of facilities for the transmission of communications . . . ."  18 U.S.C. § 2510(2) defines "oral communications" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation . . . ."

Sanchez, 821 F.2d 248, 252 (5th Cir. 1987); see also United States v. Urban, 404 F.3d 754, 773 (3d Cir. 2005) ("We have assumed that Title III applies to video surveillance"); United States v. Williams, 124 F.3d 411, 418 (3d Cir. 1997) (applying requirements of Title III in the context of video surveillance).

Title III gives practical content to the minimum standards of the Fourth Amendment as applied to electronic surveillance.  See Freitas, 856 F.2d at 1454; see also United States v. Nerber, 222 F.3d 597, 603-04 (9th Cir. 2000) ("Although no federal statute regulates the government's use of video surveillance, the existence of a law which prohibits the warrantless use of audio surveillance on a citizen . . . is strong evidence that society is not prepared to accept the warrantless use of an even more intrusive investigative  tool in the same situation").  The Court sees no reason why the rules developed under Title III in cases in which its provisions directly apply should not be applied here as well, and it appears that other courts in video surveillance cases have adopted this approach.  See Williams, 124 F.3d at 418.  Therefore, the Court will look to the provisions of Title III for guidance in the area of video surveillance.

## B.  STANDARD OF REVIEW

The government needs to meet four requirements for non-verbal video surveillance to pass constitutional muster: (1) normal investigating procedures have been tried and have failed, or reasonably appear to be unlikely to succeed, or appear to be too dangerous; (2) the warrant must contain a particular description of the type of activity sought to be videotaped and a statement of the particular offense to which it relates; (3) the warrant must not allow the period of surveillance to extend beyond a period of 30 days; and (4) that the videotaping be conducted in such a way to minimize the videotaping of activity not otherwise subject to surveillance.

Mark, 2007 U.S. Dist. LEXIS 17878 at *33; see United States v. Koyomejian, 970 F.2d 536, 542 (9th Cir. 1992); United States v. Cuevas-Sanchez, 821 F.2d 248, 252 (5th Cir. 1987); Title III.

Title III also requires a showing of probable cause in three different contexts: (1) that an individual has or is about to commit one of several enumerated offenses; (2) that particular communications relating to the charged offense will be obtained through the interception; and (3) that the facilities from which the communications are to be intercepted are being used in connection with the charged offense. Mark, 2007 U.S. Dist. LEXIS 17878 at *27; United States v. Armocida, 515 F.2d 29, 35 (3d Cir. 1975). The probable cause required for wiretaps focuses on the "target facility," or phone number believed to be used to facilitate criminal activity. Id. at 1117. Wiretaps are not necessarily directed at people. Id. at 1118. Accordingly, an affidavit supporting a wiretap order need not provide information sufficient to justify the arrest of the individual in possession of or in control of the property. Id.

## C.  DISCUSSION

In his July 9, 2008 affidavit, Howell sets forth rationale for each of the requirements that the Government must show prior to receiving authorization to conduct visual, non-verbal video surveillance.  The Court will consider each requirement in turn.

### 1.  **Probable Cause**

Defendant argues that Howell's affidavit in support of the warrant for video surveillance failed to demonstrate that there was probable cause to issue the warrant.  See Def.'s Mem. in Supp. of Mot. to Suppress at 9-10  The standard for determining whether probable cause exists under Title III is the same as that used to obtain ordinary search warrants. United States v. Tehfe,

722 F.2d 1114, 1118 (3d Cir. 1983).  The probable cause determination thus depends on the totality of the circumstances. "The task . . . is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  <u>Gates,</u> 462 U.S. at 238. In determining whether probable cause has been shown, it is appropriate to consider reasonable inferences made by law enforcement officers based on their specialized training and experience. <u>United States v. Arvizu</u>, 534 U.S. 266, 277 (2002).

Probable cause for the delayed notice search warrant issued on June 27, 2008 was based on the information provided by a concerned citizen and, upon execution of the warrant, DEA-HIDTA found numerous marijuana plants growing in the wooden shack on Defendant's property.  The facts that (1) a concerned citizen provided information about a marijuana cultivation operation on Defendant's property and (2) a subsequent search of the property revealed many marijuana plants and equipment used for growing provide sufficient evidence to reasonably believe that individuals were engaged in the illegal cultivation of marijuana and they were using the wooden shack for that purpose.  Additionally, the facts known to the officers, as stated in Howell's affidavit, establish probable cause to believe that video surveillance of the target area where the alleged growing operation was taking place would provide the officers with evidence of the scope, nature, and methods of the illegal activity.   Therefore, the Court finds that there was probable cause to issue the Court Order authorizing video surveillance.

## 2.   <u>Necessity for Video Surveillance</u>

An application for an order authorizing or approving a Title III wiretap must include "a full and complete statement as to whether or not other investigative procedures have been tried

and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). The application procedures of Title III are designed to "make doubly sure that the statutory authority [is] used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications." United States v. Giordano, 416 U.S. 505, 515 (1974). The Supreme Court has determined that the language of §§ 2518(1)(c) and (3)(c) "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." United States v. Kahn, 415 U.S. 143, 153 n.12 (1974). Title III prevents electronic surveillance from being "routinely employed as the initial step in criminal investigation." Id.; see United States v. Coles, 2007 U.S. Dist. LEXIS 74571 at *10 (E.D. Pa. Oct. 4, 2007).

To satisfy the "necessity" requirement, a "factual predicate" must exist in the Government's affidavit "to support a finding that normal investigative procedures are unlikely to be successful." United States v. Armocida, 515 F.2d 29, 38 (3d Cir. 1975); see also United States v. Williams, 124 F.3d 411, 418 (3d Cir. 1997) (finding that "the government need only lay a 'factual predicate' sufficient to inform the judge why other methods of investigation are not sufficient") (quoting United States v. McGlory, 968 F.2d 309, 345 (3d Cir. 1992)). Law enforcement officers need not exhaust every conceivable investigative technique before resorting to electronic surveillance. Williams, 124 F.3d at 418. "Rather, it is sufficient if there is evidence that normal investigative techniques . . . reasonably appear to be unlikely to succeed if tried." Id. Although traditional investigatory techniques may be sufficient to gather evidence of some crimes, "[i]nvestigations are not restricted to crimes which can be probed satisfactorily by normal methods. In the proper circumstances, the instrumentalities of Title III may be employed to discover the full extent of crimes and conspiracies." Vento, 533 F.2d at 850; see also

19

Armocida, 515 F.2d at 38 (finding that "[a]lthough the government has actual knowledge of a conspiracy and evidence sufficient to prosecute one of the conspirators, it is unrealistic to require the termination of an investigation before the entire scope of the narcotics distribution network is uncovered and the identity of its participants learned").

It is proper to take into account affirmations founded in part upon the specialized training and experience of law enforcement officers when considering whether the necessity requirement has been satisfied.  Mark, 2007 U.S. Dist. LEXIS 17878 at *23.  Whether electronic surveillance is necessary to a given investigation "is to be 'tested in a practical and commonsense fashion.'" McGlory, 968 F.2d at 345 (quoting United States v. Vento, 533 F.2d 838, 849 (3d Cir. 1976)); see United States v. Hyde, 574 F.2d 856, 862 (5th Cir. 1978).

In the affidavit accompanying the warrant for video surveillance, Howell stated that the marijuana cultivation in the shack was highly automated in order to limit the amount of work Defendants needed to do and, "[a]s a result, the limited physical surveillance that could be conducted over a 24 hour period is unlikely to achieve investigative goals of identifying the subject or subjects involved in the marijuana cultivation."  See Howell Aff. at 10-11, July 9, 2008.  Howell further noted that an unleashed dog roaming around the property had previously detected DEA-HIDTA officers, posing a physical risk to officers as well as a risk of detection. Id. at 12.

The Court finds that Howell's affidavit provided a sufficient factual predicate for finding that normal investigative techniques were unlikely to succeed at the particular stage in the investigation.  Howell's affidavit explained that conventional surveillance methods could provide only limited information and the remote location would make it difficult to conduct

surveillance without being detected.  <u>See</u> Howell Aff. at 12, July 9, 2008.  Detection of the officer's surveillance would have jeopardized the investigation by alerting coconspirators before officers could determine the scope, nature, and methods of the illegal activity.  Therefore, conventional techniques would have done little to expose the entire workings of the marijuana cultivation operation.  Additionally, conventional surveillance methods would be dangerous, considering the fact that an unleashed dog previously detected officers in the target area.

The Court finds that normal investigative techniques were unlikely to achieve the investigative goals of identifying the nature and subjects involved in the marijuana cultivation operation, considering the facts that (1) an interior view of the wooden shack where the marijuana was being grown would not be feasible, (2) there was a substantial risk of detection of the officers presence, and (3) there was a physical risk of bodily harm to the officers. Understanding that the agents were not required to exhaust every possible method of investigation before applying for a warrant for video surveillance, the Court finds that the necessity requirement of Title III is satisfied.  <u>See</u> <u>Mark</u>, 2007 U.S. Dist. LEXIS 17878 at *26; <u>see also</u> <u>Williams</u>, 124 F.3d at 418 (finding that the government had shown necessity for video surveillance where agents were unable to use confidential informants without a high risk of discovery, aural surveillance could not perceive silent criminal activity, and coconspirators used evasive techniques to avoid detection); <u>United States v. Guerra-Marez</u>, 928 F.2d 665, 670 (5th Cir. 1991) (finding necessity satisfied even though officers had not fully exploited controlled purchases, confidential informants, and other traditional surveillance because the untried methods were not reasonably likely to succeed).

### 3.  <u>Particular Description</u>

With respect to the requirement for a particular description of the type of activity sought to be videotaped and the offense to which it relates, Howell stated in the affidavit that the purpose of videotaping was to determine the identity of the individuals involved in the marijuana cultivation operation, as well as the size and scope of the operation.  The affidavit explains that video surveillance is to be used to observe which persons are involved in the marijuana cultivation operation and their respective roles in such illegal activity. See Howell Aff. at 8.  The Court finds that the affidavit accompanying the warrant for video surveillance sufficiently describes the type of activity sought to be videotaped, and the particular offense to which it relates.

### 4.  **Time Period of Surveillance**

The initial Court Order, authorizing the interception and recording of non-verbal conduct and activities of Defendant, limited the time period allowed for surveillance to thirty days. See Order authorizing video surveillance of visual, non-verbal conduct, July 9, 2008, (Misc. # 2008/0025).  The Government requested and the Court approved an extension of the original Order, permitting continued surveillance for an additional thirty days.  Extensions require the same showing as an initial application. 18 U.S.C. § 2518(5). Thus, the same determinations as to probable cause and the inadequacy of other investigative procedures must be made. Id. § 2518(3); see Williams, 124 F.3d at 428.

The extension request by the Government stated that continued interception was needed to reveal (1) the manner in which the particular offenses were being committed, (2) the precise nature, scope, and extent of the offenses, and (3) the identity and roles of accomplices, aiders and abettors, co-conspirators, and participants.  See Application for Order Extending Authorization

22

For Interception by Means of Closed Circuit Television, approved on August 6, 2008, (Misc. # 2008/0032).  The affidavit submitted in support of the extension request states that two individuals who participated in the cultivation of marijuana plants in the target area were positively identified via video surveillance and, "at least five other individuals yet to be identified have entered [the target area]."  Howell Aff. in support of extension at 10.  The affidavit explains that "a 30 day extension to the original order will assist with the identification of these other individuals, all of whom came to the wooden shack . . . ."  Id.

The affidavit in support of an extension states that alternative investigative procedures, including interviewing the two positively identified parties or conducting visual surveillance, would probably be unsuccessful.  Id. at 12.  Interviewing the two individuals identified would make these parties aware that they are under federal investigation, and they, "would likely dispose of the marijuana quickly, thereby compromising the ongoing investigation."  Id.  Visual surveillance was also considered but, "it would be almost impossible to avoid detection . . . . Creque Dam Road is heavily wooded and there is no place to surreptitiously set-up a vehicle . . . ."  Id.  Furthermore, the presence of a dog in the target area that is untied and unrestricted, "poses both a risk of detection to surveillance officers and a physical threat to them thus, making future surveillance difficult and risky to attempt."  Id.

Based on these representations, the Court finds that the Government made an adequate showing of probable cause and lack of alternative investigative means to justify the extension of the surveillance order.  Where conventional techniques will not show the entire scope of the illegal operation, electronic surveillance is permissible, even in those situations where conventional techniques will allow for the arrest and conviction of some members.  "Although

the government has actual knowledge of a conspiracy and evidence sufficient to prosecute one of the conspirators, it is unrealistic to require the termination of an investigation before the entire scope of the [operation] is uncovered and the identity of the participants learned." Hyde, 574 F.2d at 869; see also Williams, 124 F.3d at 419 (finding the "necessity" requirement satisfied where government detailed how further use of conventional techniques would result in discovery of investigation by defendants).  The Court finds that the thirty day extension of the initial thirty day period for surveillance was properly approved by the Court.

     **5.  <u>Minimization</u>**

     After law enforcement officers receive court authorization for video surveillance, they have a continuing duty to minimize the interception of communications that are not relevant to the criminal investigation. See 18 U.S.C. § 2518(5). Title III provides that, "[e]very order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception . . . ." Id.; see Coles, 2007 U.S. Dist. LEXIS 74571 at *35.  The minimization effort must be objectively reasonable in light of the totality of the circumstances. See United States v. Hull, 456 F.3d 133, 142 (3d Cir. 2006); Armocida, 515 F.2d at 43; United States v. Adams, 759 F.2d 1099, 1115 (3d Cir. 1985); see also Scott v. United States, 436 U.S. 128, 139-140 (1978) (holding that "test of reasonableness" is applied to particular facts of each case); Vento, 533 F.2d at 854 ("Minimization is not to be judged by a rigid hindsight that ignores the problems confronting the officers at the time of the investigation").

Each video surveillance Order contained a provision mandating that the recording be conducted in such a manner as to minimize interception of visual, non-verbal conduct which is not criminal in nature.   The Order extending authorization for video surveillance states that, "post-minimization may be necessary in order to assure that surveillance viewed is limited to activity described . . . [a]ny non-relevant conduct captured by the proposed video surveillance will not be viewed further, nor disclosed to other members of the investigative team, or to any other persons."  See Order Extending Authorization For the Interception of Visual Non-Verbal Conduct and Activities, August 6, 2008, (Misc. # 2008/0032).  In addition, Howell's affidavit describes minimization procedures in place.  The video cameras were activated by motion sensors and officers reviewed the videos in order to redact any images not related to marijuana cultivation, thereby limiting any video of activity not otherwise subject to surveillance.  See Howell Aff. at 13, July 9, 2008.

There is no evidence in the record before the Court that the government did anything contrary to the Court's video surveillance Orders or contrary to the minimization instructions therein.  Furthermore, Defendant has failed to identify any specific recordings which he claims should not have been intercepted.  See United States v. Carter, 449 F.3d 1287, 1295 (D.C. Cir. 2006) (holding that defendant's general allegation that government did not comply with statutory minimization requirement is inadequate).  Considering the totality of the circumstances, the Court finds that the officers' minimization efforts were reasonable and the videotaping was conducted in such a way to minimize the videotaping of activity not otherwise subject to surveillance.  Accordingly, there is no basis to suppress the interceptions under §2518(5).  Because all of the requirements were met, the Court finds that the warrant for video surveillance and the extension thereof was valid

**IV. CONCLUSION**

For the reasons stated above, the Court finds that, with respect to the delayed notice search warrant issued on June 27, 2008, (1) there was probable cause to issue the warrant, (2) Defendant has made an inadequate showing to mandate a <u>Franks</u> hearing under the circumstances of this case, and (3) the time period for notice was effectively extended by the subsequent Court Orders authorizing video surveillance and sufficient notice of the covert search was provided to Defendant within a reasonable time.  The Court finds that, with respect to the July 6th  and August 9th, 2008 Orders authorizing video surveillance, the requirements for a valid video surveillance search warrant were satisfied.  Accordingly, Defendant's Motion to Suppress is **DENIED**.

**ENTERED this 31st day of March, 2009.**

/s/

**HONORABLE RAYMOND L. FINCH**
**SENIOR U.S. DISTRICT JUDGE**